**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF KENTUCKY**
**LONDON DIVISION**
**CIVIL ACTION NO. ____________**

**APRIL B. HARRIS** **PLAINTIFF**

**VS.**

**JAMES C. EGNEW** **DEFENDANTS**

**SERVE: James C. Egnew (via Sheriff)**
**P.O. Box 337**
**Stearns, Kentucky 42647**

**And**

**OUTDOOR VENTURE CORPORATION**

**SERVE: Outdoor Venture Corporation (via Sheriff)**
**Attn: James C. Egnew, Registered Agent**
**P.O. Box 337, State Hwy. 92**
**Stearns, Kentucky 42647**

## COMPLAINT

NOW COMES Plaintiff April B. Harris ("Ms. Harris") and complains of Defendants James C. Egnew ("Defendant Egnew") and Outdoor Venture Corporation ("OVC") (collectively, "Defendants"), as follows:

## SUMMARY OF THE ACTION

1. This case arises from Defendants' calculated and collective effort to cause substantial psychological and emotional distress to the owner of a business

competitor for the improper purpose of eliminating competition for lucrative government procurement awards. Defendant OVC competes with Camel Manufacturing Company, of which Ms. Harris is owner, president and CEO, in the manufacture and supply of tents and tent-related products for the United States government and military; as such, Defendant OVC and Camel compete for the same government contracts. Lacking any meritorious challenge to the recent award of a contract to Camel, Defendants have instead engaged in and pursued a sustained and improper effort to intimidate Ms. Harris, poison Camel's relationships with its only client (the U.S. government), and to eliminate Camel as a viable competitor for future awards by, among other actions, stalking Ms. Harris and her family and publishing impertinent, irrelevant, scandalous and outrageous contentions about Ms. Harris and her family to the Government Accountability Office and other clients of Camel. Ms. Harris brings this action against Defendants for intrusion upon seclusion, intentional infliction of emotional distress, abuse of process, conspiracy and an award of her punitive damages and her attorneys' fees.

**<u>THE PARTIES</u>**

2. Plaintiff April B. Harris is the president and CEO of Camel, a leading designer, developer and manufacturer of high quality tent products for the U.S.

government and its military. Her address is 3534 Captains Way, Knoxville, Tennessee 37922.

3. Defendant James C. Egnew is chairman and president of Defendant Outdoor Venture Corporation. He is a resident of Stearns, McCreary County, Kentucky. On information and belief, his address is PO Box 425, Stearns, Kentucky 42647.

4. Defendant Outdoor Venture Corporation is a manufacturing company that supplies modular military tents to the United States Department of Defense. Its principal place of business is located at 30 Venture Drive, Stearns, McCreary County, Kentucky 42647.

**JURISDICTION AND VENUE**

5. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds $75,000.00, exclusive of interest and costs, and is between citizens of different States.

6. Defendant James C. Egnew is subject to the personal jurisdiction of this Court because he resides in this district. Defendant OVC is subject to the personal jurisdiction of this Court because it resides in this district and does business in this district.

7. Venue is appropriate in this district and division pursuant to 28 U.S.C. § 1391(a), because both Defendants reside in this district and division, and because the acts giving rise to the claims alleged herein occurred in this district and division.

## FACTUAL BACKGROUND

8. Camel has been manufacturing tents in Tennessee since 1919 and has been selling military tents and related products to the U.S. government since World War II.

9. Mr. Egnew was an employee of Camel for three years beginning in 1969. He eventually became disgruntled due to a business dispute with Camel's leadership and left the company in 1972.

10. Upon leaving Camel, Mr. Egnew moved to McCreary County, Kentucky, where he co-founded OVC in 1972. Since that time, OVC has produced a range of products including commercial and military tents, sleeping bags and hunting products. OVC began supplying military tents for the U.S. government in 1984.

11. Since 1984, Camel and OVC have been competitors in the manufacture and supply of tents and tent-related products to the U.S. government

and military. During that time, the companies have often submitted competing bids for the same government contracts.

12. On July 15, 2011, the Defense Logistics Agency ("DLA") awarded a contract worth approximately $8.37 million to Camel for the production and supply of "lightweight maintenance enclosures" for use by the Army, Navy, Air Force and Marine Corps (the "Contract").

13. The Contract was awarded without an open bid competition. For this reason, DLA released a report in connection with the Contract entitled "Justification For Other Than Full and Open Competition," which explained that DLA's bid solicitation was open only to Camel because dwindling demand for military tents poses a threat to the long-term viability of the small number of businesses that supply military-specification tents, including Camel. Accordingly, the report noted DLA's conclusion that "[i]t is vital that DLA Troop Support provide sustaining work for this existing manufacturer [Camel] who is familiar with the unique needs and specifications associated with manufacturing military tents and tent components."

14. As it had every right to do, Defendant OVC protested the Contract to the Government Accountability Office ("GAO"). Among the materials submitted by Defendant OVC to the GAO in furtherance of its protest was a September 2,

2011 letter (the "Bid Protest Letter") that included substantial material intended to cause damage to Ms. Harris and Camel but was entirely impertinent, irrelevant and immaterial to the protest or any legitimate issue that could have been raised therein.

15. In fact, the vast majority of the information submitted by OVC in the Bid Protest Letter is unrelated to Camel or its business, but instead consists of personal information regarding Ms. Harris and her family that Defendants know has no, nor could have any, bearing on the validity of DLA's decision to award the Contract to Camel.

16. Specifically, Defendant's OVC's Bid Protest Letter included aerial surveillance photographs of Ms. Harris' private Knoxville, Tennessee home and surrounding property, including her swimming pool, taken from an aircraft during a "flyover" of Ms. Harris' private property.

17. The Bid Protest Letter also included surveillance photographs of Camel's private employee parking lot and shipping containers on the back of Camel's private property. On information and belief those images were obtained by agents of Defendants who had unlawfully accessed Camel private property without authorization.

18. Defendants also referenced and attached to the Bid Protest Letter an article from *Wellington the Magazine*, a publication that caters to residents of the Wellington residential development in Palm Beach County, Florida. The article features a write-up and photographs of Ms. Harris' Florida vacation home. The article makes no mention nor has any relationship to Camel or its business.

19. Finally, the Bid Protest Letter also attached a flyer from a local Knoxville, Tennessee charity that identifies Ms. Harris and her husband as sponsors of an environmental fundraising charity event at a Knoxville-area nature center. Here too, the flyer makes no mention nor has any relationship to Camel or its business.

20. On information and belief, Defendants engaged one or more agents to obtain these images of Ms. Harris' private home and her place of business, and to investigate and gather personal information about Ms. Harris' and her family's activities in their home community. The purpose of these activities was, among other goals, to intimidate and frighten Ms. Harris and, ultimately, to irreparably damage and interfere with Camel's relationship with its key clients.

21. On information and belief, in furtherance of those efforts, Defendant Egnew engaged in at least one calculated conversation with a representative of Camel's only client, the United States Army, in which Defendant Egnew discussed

Ms. Harris' private affairs, including intimate details of Ms. Harris' lifestyle and her daughter's private wedding. (The wedding was a private event and attended only by invited guests – Defendant Egnew was not an invited guest and did not attend.)

22. Defendants' conduct described above has caused Ms. Harris to feel harassed, threatened, humiliated, embarrassed, and to be the subject of uninvited and unwarranted scrutiny and intrusion into her private affairs.

23. As a direct and proximate result of such actions by Defendants, Ms. Harris has suffered damage, including but not limited to suffering humiliation, embarrassment, fear, paranoia, stress and severe emotional distress.

24. Defendants' unlawful conduct described above has interfered Ms. Harris' ability to conduct her business affairs. On one recent occasion, Ms. Harris felt compelled to leave a business conference once she realized Defendant Egnew was also in attendance, because she feared a confrontation with Defendant Egnew.

25. As a direct and proximate result of Defendants' unlawful conduct described above, Ms. Harris has incurred substantial expense to upgrade her home security system, including the addition of video surveillance cameras, a bedside panic button and a wireless remote panic button for use during walks on her property and the surrounding area.

26. As a direct and proximate result of Defendants' unlawful conduct described above, Ms. Harris has altered her daily routine, including among other changes discontinuing nightly walks with her dog in the wooded area near her home.

27. Ms. Harris fears that Defendants or their agents have followed and observed, and continue to follow and observe, Ms. Harris and her family at all times, even in the privacy of their home and at their businesses. Defendants' conduct has directly caused Ms. Harris and her family to feel continually threatened and stalked, with the result being that Ms. Harris has suffered from severe emotional and physical distress, including fear, anxiety, depression, insomnia, loss of consortium and paranoia.

## COUNT ONE

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

28. Ms. Harris restates and incorporates the averments contained in Paragraphs 1 through 27 of the Complaint as if fully stated herein.

29. Defendants acted intentionally to obtain aerial surveillance photographs of Ms. Harris' private home and to make public these images in their submission to GAO.

30. Defendants acted intentionally to divulge details of Ms. Harris' private lifestyle and of her daughter's private wedding – a wedding Mr. Egnew did not even attend – to a representative of the U.S. Army, Camel's only client.

31. Defendants acted intentionally to investigate and publish irrelevant information concerning Ms. Harris' Florida vacation home to DLA in their submission to GAO.

32. Defendants acted intentionally to investigate and publish irrelevant information concerning Ms. Harris' and her family's sponsorship of a local fundraising charity event to DLA in their submission to GAO.

33. The information regarding Ms. Harris' private homes, her personal community activities and her daughter's wedding was in no way related to the Contract, nor could it have been related to any legitimate protest thereof.

34. Defendants' conduct was outrageous, extreme and beyond all bounds of decency.

35. As a direct result of Defendants' conduct, Ms. Harris has suffered severe emotional distress.

36. Ms. Harris is entitled to damages as a result of Defendants' tortious and intentional infliction of emotional distress under Kentucky law.

## COUNT TWO

## INVASION OF PRIVACY - INTRUSION UPON SECLUSION

37. Ms. Harris restates and incorporates the averments contained in Paragraphs 1 through 36 of the Complaint as if fully stated herein.

38. By surveilling Ms. Harris' private home and property, and her place of business, and then submitting photographs of same to GAO, Defendants intruded into areas in which Ms. Harris had a reasonable expectation of privacy and which she sought to keep private.

39. By investigating and soliciting detailed information about Ms. Harris' daughter's wedding – a wholly private affair – and disseminating such information to a representative of the U.S. Army, Camel's only client, Defendants intruded into an area in which Ms. Harris had a reasonable expectation of privacy and which she sought to keep private.

40. By investigating and publishing irrelevant information concerning Ms. Harris' and her family's sponsorship of a local fundraising charity event in their submission to GAO, Defendants intruded into an area in which Ms. Harris had a reasonable expectation of privacy and which she sought to keep private.

41. A reasonable person would object to the method in which Defendants intruded upon Ms. Harris' seclusion by using aerial and ground surveillance

because, among other reasons, it involved the use of an aircraft flying through the airspace over Ms. Harris' private home in order to capture images of her private property, and the surveillance of her business property.

42. Defendants' method of intruding upon Ms. Harris' daughter's private wedding had to have consisted of either (a) Defendants' attending, or engaging a third party to attend, the wedding to which they were not invited or (b) gathering information about the wedding from an individual who was an invited guest. A reasonable person would object to either of these methods used to intrude upon Ms. Harris' seclusion, and to the publication of information about the private event to existing and prospective clients without permission, authorization or relevance.

43. Defendants' method of intruding upon Ms. Harris' seclusion by investigating and publishing irrelevant information about Ms. Harris' and her family's sponsorship of a local fundraising charity event had to have consisted of either Defendants' (a) investigating Ms. Harris' and her family's civic activities in the Knoxville, Tennessee area or (b) engaging a third party to conduct such an investigation. A reasonable person would object to either of these methods used to intrude upon Ms. Harris' seclusion.

44. Ms. Harris is entitled to damages as a result of Defendants' intrusion upon Ms. Harris' seclusion under Kentucky law.

## COUNT THREE

## ABUSE OF PROCESS

45. Ms. Harris restates and incorporates the averments contained in Paragraphs 1 through 44 of the Complaint as if fully stated herein.

46. Defendants have disclosed the private information described herein to GAO under the guise of a purported bid protest.

47. According to GAO, a bid protest is "a challenge to the award or proposed award of a contract for procurement of goods and services or a challenge to the terms of a solicitation for such a contract." (*See* http://www.gao.gov/legal/bids/bidfaqs.html#1.)

48. Defendants did not submit the Bid Protest Letter to challenge an "award… of a contract for procurement of goods and services" or to "challenge [] the terms of a solicitation for such a contract." Instead, Defendants possessed an ulterior purpose in filing the Bid Protest Letter: their true motive was to ruin Camel's chances of winning any future government contracts by publishing to its clients impertinent, irrelevant, immaterial and deeply private and personal information intended to cause Camel's clients to draw conclusions about Ms. Harris' private financial affairs and falsely impute such conclusions to Camel regarding its viability as a government contractor.

49. Defendants' objective in filing the Bid Protest Letter was not a legitimate use of GAO's bid protest process.

50. Despite that Defendants' objective is not a legitimate use of GAO's bid protest process, Defendants nevertheless filed the Bid Protest Letter with GAO.

51. As a direct result of Defendants' conduct, Ms. Harris has been harmed, including suffering severe emotional distress and other damages.

52. Ms. Harris is entitled to recover damages as a result of Defendants' abuse of process under Kentucky law.

## COUNT FOUR

## CIVIL CONSPIRACY

53. Ms. Harris restates and incorporates the averments contained in Paragraphs 1 through 52 of the Complaint as if fully stated herein.

54. Defendants have agreed to engage in the unlawful actions described herein by concerted action.

55. Moreover, Defendants have taken overt acts in furtherance of the unlawful actions.

56. Defendants are liable for civil conspiracy under Kentucky law.

57. Ms. Harris is entitled to recover damages for Defendants' conspiracy to commit the torts of intentional infliction of emotional distress, intrusion upon seclusion and abuse of process.

**COUNT FIVE**

**PUNITIVE DAMAGES**

58. Ms. Harris restates and incorporates the averments contained in Paragraphs 1 through 57 of the Complaint as if fully stated herein.

59. Defendants' actions described herein with respect to Ms. Harris' claim of intentional infliction of emotional distress were intentionally directed toward Ms. Harris and involve oppression or malice.

60. Defendants' actions described herein with respect to Ms. Harris' claim of intrusion upon seclusion were intentionally directed toward Ms. Harris and involve oppression or malice.

61. Defendants' actions described herein with respect to Ms. Harris' claim of abuse of process were intentionally directed toward Ms. Harris and involve oppression or malice.

62. Defendants' actions described herein with respect to Ms. Harris' claim of civil conspiracy were intentionally directed toward Ms. Harris and involve oppression, fraud or malice.

63. Ms. Harris is entitled to punitive damages in connection with all of her claims under KRS § 411.184.

## COUNT SIX

## ATTORNEYS' FEES

64. Ms. Harris restates and incorporates the averments contained in Paragraphs 1 through 63 of the Complaint as if fully stated herein.

65. Defendants' bad faith has caused Ms. Harris to incur attorneys' fees and expenses in order to seek relief in the form of the claims asserted herein.

66. As a result of Defendants' bad faith, Ms. Harris is entitled to recover all expenses of litigation, including attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Ms. Harris prays for judgment against Defendants as follows:

(a) That Ms. Harris be awarded damages against Defendants pursuant to Count I (Intentional Infliction of Emotional Distress) in an amount to be determined at trial;

(b) That Ms. Harris be awarded damages against Defendants pursuant to Count II (Intrusion Upon Seclusion) in an amount to be determined at trial;

(c) That Ms. Harris be awarded damages against Defendants pursuant to Count III (Abuse of Process) in an amount to be determined at trial;

(d) That Ms. Harris be awarded damages against Defendants pursuant to Count IV (Civil Conspiracy) in an amount to be determined at trial;

(e) That Ms. Harris recover from Defendants punitive damages justified by Defendants' oppressive, fraudulent and malicious behavior, pursuant to KRS § 411.184;

(f) For a trial by jury on all issues so triable; and

(g) That Ms. Harris be awarded her attorneys' fees, costs and such other and further relief as is just and proper.

Respectfully submitted,

McBRAYER, McGINNIS, LESLIE
& KIRKLAND, PLLC
201 East Main Street, Suite 1000
Lexington, Kentucky 40507
(859) 231-8780

BY: *__/s/ Jon A. Woodall____________*
JON A. WOODALL
DANIEL LUKE MORGAN

And

MCKENNA LONG &
ALDRIDGE, LLP
303 Peachtree Street, Suite 5300
Atlanta, Georgia 30308
(404) 527-4000
(404) 527-4198 (facsimile)
S. Derek Bauer
Georgia Bar No. 042537
Darrell J. Solomon
Georgia Bar No. 305922
Laurice M. Rutledge
Georgia Bar No. 900568

*Pro hac vice* admission pending

ATTORNEYS FOR PLAINTIFF
APRIL B. HARRIS