DUANE COOK & ASSOCIATES, PLC
ATTORNEYS-AT-LAW

135 N. BROADWAY
GEORGETOWN, KENTUCKY 40324
502.570.0022 FAX 502.570.0023
www.duanecookandassociates.com

Via electronic mail and U.S. mail

Jon A. Woodall
McBrayer, McGinnis, Leslie & Kirkland, PLLC
201 East Main Street, Ste. 1000
Lexington, KY 40507

S. Derek Bauer
McKenna, Long & Aldridge, LLP
303 Peachtree Street, Suite 5300
Atlanta, GA 30308

Defendant's
Exhibit
6

July 20, 2012

Dear John & Derek:

The purpose of this letter is to outline the various deficiencies found in the Plaintiff's Response to Outdoor Venture Corp's First Set of Written Discovery that was served on us on July 9, 2012. We hope that you will be able submit more appropriate responses in light of these issues.

General Issues

Conflation/Juxtaposition/Non-Party

The most prominent objection in your response is that various requests "improperly conflate[] and/or juxtapose[] Ms. Harris in her individual capacity with Camel, a corporate entity wholly separate and distinct from Ms. Harris." E.g. Response to Request for Admission 1. This objection appears in your responses to Requests for Admission 1,2,3, and 4, Interrogatories 11, 12, 13, 14, 17, 18, 19 , 20, 21, 22, and 23, and Requests for Production 5, 6, 7, 8, 9, 10, 11, 14, 17, 18, 19, 20, 21, 23, 24, 25, 26, and 27. Certain of these responses also point out that "Camel is a non-party and not properly subject to discovery through interrogatories directed to Ms. Harris in her individual capacity." E.g. Response to Interrogatory 12.

One issue with this objection is factual. You claim that Ms. Harris is "wholly separate and distinct" entity from Camel. While Camel may be distinct from Ms. Harris, to say that it is wholly separate from her strains credibility. In Response to Interrogatory 11, you state that Ms. Harris "is the only person who held an equity interest in Camel." Her position as the sole owner of Camel belies the claim that she is wholly separate from it.

The major issue with your objection is one of propriety. Even assuming we have done all that you accuse us of doing with these requests, your objections are improper. Whether we have

D. Duane Cook
502.570.4545
duane@duanecookandassociates.com

John M. Sosbe, Associate
502.570.4547
john@duanecookandassociates.com

Jason M. Obermeyer, Associate
502.570.4548
jason@duanecookandassociates.com

conflated/juxtaposed April Harris and Camel or not and the fact that Camel is not a party are immaterial to your obligations under the Federal Rules of Civil Procedure.

The rules on the various types of discovery and requests for admissions bear this out. To begin with, the fact that a request for admission is about a non-party entity does not matter; the rule on this particular type of discovery does not require it to be about the party. See FED. R. OF CIV. P. 36(a)(1). The issue in answering is whether the fact is within the party's knowledge. See Id. at 36(a)(4).

The rule regarding interrogatories is similar: the fact that it asks for information about a non-party is not, in and of itself, objectionable. See FED. R. OF CIV. P. 33(a)(2). "[A] party must provide information in response to a Rule 33 interrogatory if such information is under its control." Costa v. Kerzner Intern. Resorts, Inc., 277 F.R.D. 468, 471 (S.D. Fla. 2011).

The same is true of Requests for Production. A party is required to produce requested items that are in the "party's possession, custody, or control." FED. R. OF CIV. P. 34(a)(1). Again, Ms. Harris' ability to obtain the information requested is what is relevant here. For the purposes of a request for production, "[c]ontrol is defined not only as possession, but as the legal right to obtain the documents requested upon demand." Searock v. Stripling, 736 F.2d 650, 653 (11th Cir.).

The strangest part of your objection is that you yourself seem to conflate Mr. Harris and Camel. In response to Interrogatory 7, you indicate that a portion of your claim for attorney's fees is based on the legal expenses of Camel. Which is it? Is April Harris a separate and distinct entity from Camel or are their affairs so intertwined that its costs are her damages?

Again, your answer to Interrogatory 11 states that Ms. Harris was the sole owner of Camel. Unless she has since divested herself of her ownership of Camel, it would be out of the ordinary for her to not have control of it sufficient to provide us with the information and documents we seek. While Camel is not subject to discovery, April Harris, and all of the information she has under her control regarding Camel, is. These requests were directed to April Harris and she must answer with all of the information available to her. We hope that you will correct your responses to reflect this fact.

<u>Vagueness/ Lack of Clarity</u>

You also objected to several requests for discovery based on the request being vague or unclear: specifically, Requests for Admission 2 and 3, and Interrogatory 16. In Request for Admission 2 and 3, you stated that you objected to "the word 'induce' . . . as vague and unclear." Responding to your objection on its own terms, it should be noted that "it is not grounds for objection that the request is 'ambiguous' unless so ambiguous that the responding party cannot, in good faith, frame an intelligent reply." U.S. ex rel. Englund v. Los Angeles County, 235 F.R.D. 675, 685 (E.D. Cal. 2006). In this case, as noted above, you in fact managed to formulate a reply. This indicates that the requests were not ambiguous or vague. Further, the word induce is in no way vague or ambiguous. Webster's defines induce as "to move by persuasion or influence." The request clearly asks whether or not Camel provided information to the Defense

Logistics Agency to lead or move it to award Camel the indicated contract. Again, this was clear enough that you were able to formulate an answer that was qualified only by your objection that it was vague. If the request was actually vague, you would have been unable to do so. Put differently, you obviously knew what the requested admission meant.

The same points can be made regarding your response to Interrogatory number 16. The interrogatory was apparently clear enough that you were able to know exactly the type of information that we were looking for. These requests for admission and interrogatories should be corrected to more directly answer the questions posed.

GAO Protective Order

Lastly among your repetitive objections, you claim that a GAO protective order prohibits you from properly responding to Requests for Production 24, 25, and 26. We would of course need a copy of this protective order to fully evaluate this claim; however, since the general goal of GAO protective orders is to "limit[] disclosure of certain material and information submitted [in a protest], so that no party obtaining access to protected material under this order will gain a competitive advantage as a result of the disclosure," OFFICE OF THE GENERAL COUNSEL, UNTIED STATES GOVERNMENT ACCOUNTABILITY OFFICE, GUIDE TO GAO PROTECTIVE ORDERS 17 app. B, it is unlikely to prohibit you from disclosing the material in this case. To the extent that the redacted information in the letter deals with information regarding Camel or April Harris, this information would not have been obtained by Ms. Harris or the entity that she controls –Camel – as part of the protest. Further, to the extent that we obtain the material through discovery rather than through a protest, we are not a "party obtaining access to protected material under [the protective] order;" therefore, it does not seem the GAO order would prohibit disclosure by you to us in discovery.

Moreover, the idea that the GAO protective order overrides your responsibly to the Court in discovery is questionable. See In re Bankers Trust Co., 61 F.3d 465, 470 (6th Cir. 1995) ("To allow a federal regulation issued by an agency to effectively override the application of the Federal Rules of Civil Procedure and, in essence, divest a court of jurisdiction over discovery, the enabling statute must be more specific than a general grant of authority as found here"). Even if the GAO order purports to apply to this situation, it would be beyond the authority granted to it by its enabling statute. Under 31 U.S.C. § 3553(f)(2)(A), the Comptroller General has authority to issue orders restricting the dissemination of documents provided "under paragraph (1)." Paragraph 1 provides that "[w]ithin such deadlines as the Comptroller General prescribes, upon request each Federal agency shall provide to an interested part any document relevant to a protested procurement action . . . that would not give the party a competitive advantage and that the party is otherwise authorized by law to receive." 31 U.S.C. § 3553(f)(1). The GAO power to protect information is hence limited to situations where the party was provided that information during the course of the protests. Again, Camel and Ms. Harris would not have learned information about themselves through the protest process, so to the extent that the GAO protective order purports to limit Camel and April Harris' ability to provide the request information through discovery in this case, it will have overstepped its bounds and not be effective. In light of these issues with the coverage of the GAO protective order, we encourage you to correct your responses.

Issues with Specific Responses

Request for Admission 5

This request asked you to admit that the details of Somerville Culbertson's (nee' Harris) wedding "were featured in one or more articles or publications, which were available to the public." Instead of admitting the fact requested, you stated that "the April 2010 issue of *Knoxville Magazine* included a reference to Ms. Harris's daughter's wedding" and for no apparent reason "that the document (sic) contents speak for themselves (sic)." As a technical matter, you failed to admit that that the publication was available to the public, although presumably it was. As a factual matter, saying that Ms. Harris' daughter's wedding was "reference[d]" in the *Knoxville Magazine* is an incredible understatement. While the wedding may have been merely referenced in the April 2010 issue of *Knoxville Magazine*, it was also the subject of a 4 page article in the November issue. The article is attached to this letter for your reference. This article contains pictures of April Harris' daughter and her husband kissing, the altar at which they were married, the reception's place setting, the wedding cake, Ms. Harris' daughter dancing with a gentleman we assume to be her father, and two tastefully attired Golden Retrievers. To list the details of the wedding and their personal lives revealed in this article would basically require copying and pasting the entire thing. Ms. Harris' daughter's name is even included in an advertisement for the store she registered at. Your answer to this request for admission is plainly unresponsive and should be corrected.

Request for Admission 6

You stated that "[a]fter reasonable inquiry, Ms. Harris lacks information sufficient to admit or deny this request." "The responding party's simple statement that he or she has made a 'reasonable' inquiry and is unable to admit or deny the request because insufficient information is available may not suffice as an answer to the request for admission." U.S. ex rel Englund v. Los Angeles County, 235 F.R.D. 675, 685 (E.D. Cal. 2006). Explain what inquiries into this matter Ms. Harris has made so that we can evaluate their reasonableness. Please take note that the court has discretion to deem the matter admitted if you did not in fact make a reasonable inquiry. Asea, Inc. v. Southern Pac. Transp. Co., 669 F.2d 1242, 1247 (9th Cir. 1981).

Interrogatory 9

This interrogatory requested that you "set forth what information [regarding Ms. Harris' daughter's wedding] Defendants published or otherwise made known which they could not have obtained via public information." Your answer states that Ms. Harris learned "Defendant Egnew discussed details [of the wedding] that [she] believes could only be known to someone who attended the wedding." Since the interrogatory asks what those details were, a responsive answer and your corrected response should specifically state them.

Interrogatory 12

While the general inappropriateness of your objection based on the assertion that our discovery "improperly conflates and/or juxtaposes Ms. Harris in her individual capacity with Camel, a corporate entity wholly separate and distinct from Ms. Harris" and that "Camel is a non-party and not properly subject to discovery through interrogatories directed to Ms. Harris in her individual capacity" has been discussed above, it is particularly inappropriate here. This interrogatory asks for information about any distributions made to equity holders of Camel. Having already established in a previous answer that the only equity holder is Ms. Harris, this interrogatory effectively asks what distributions have been made to Ms. Harris. This makes the Interrogatory about Ms. Harris directly. Your corrected response should plainly answer this question.

Interrogatory 15

The term property is generally regarded to include money. Are you saying that Ms. Harris receives no money from Camel? Let us know if this is what you are in fact claiming and whether or not there are other items of property to add on further reflection.

Request for Production 24

In addition to your objection based on the GAO protective order which has already been addressed, you state that "Ms. Harris possesses no documents responsive to this Request." The document requested is "the letter sent by Jessica C. Abrahams and Erin B. Sheppard of McKenna Long & Aldridge, LLP to Frank Maguire of the Government Accountability Office dated September 2, 2011." McKenna Long & Aldridge, the author of the letter, currently represents Ms. Harris in this very matter. Further, Ms. Harris controls the entity - Camel - on whose behalf the letter referenced in this request was written. The only way for Ms. Harris to not have possession of this document in the way contemplated by the discovery rules is if both she and McKenna Long & Aldridge have destroyed it. Has Ms. Harris destroyed this document? Does McKenna Long & Aldridge not keep copies of things? In your corrected response, provide an unredacted copy of the referenced letter as requested.

We ask that you address these issues immediately. If you do not correct your responses by July 30, 2012, we will seek to compel compliance. If we take that step, we will seek whatever sanctions and other remedies are available to our client in these circumstances. Please also note that any further objections you may have had to these requests are waived, NATIONAL LEGAL RESEARCH GROUP, FED. PROC., LAWYER ED. §26:645 Wavier of Objection by Failure to Object & §26:736 Objection; FED. R. OF CIV. P. 33(b)(4), so we will consider further objections in response to this letter as a non-response and proceed with a motion to compel.

Regards,

D. Duane Cook
Duane Cook & Associates, PLC
135 North Broadway
Georgetown, KY 40324

Ashley K. Brown
Gregg E. Thornton
Ward, Hocker & Thornton, PLLC
333 W. Vine Street, Suite 1100
Lexington, KY 40507

*Co-counsel for Outdoor Venture Corp. and James C. Egnew*


November 2010 knoxville.com
knoxville
STYLE | PEOPLE | HEALTH | HOME | DINING | SHOPPING | ENTERTAINMENT
TENNESSEE'S GOVERNOR-ELECT
Bill Haslam
Exclusive:
Spend your dollars at home
Notable Knoxvillians share their holiday reflections & recipes
The Sporting Life
It's all fair game inside this Dunaway hunting lodge



Say Yes!

# Love in Bloom

SOMMERVILLE AND BRETT WED IN THE MEADOW AT RT LODGE

By
WHITNEY SMITH

Photographs by WALDORF PHOTOGRAPHIC ART

UNDER A STUNNING ARBOR OF 1,000 Virginia roses and hydrangea, Sommerville Harris and Bret Culbertson said "I do" on August 21, 2010, at RT Lodge in Maryville, Tenn. The wedding weekend was a celebration at the lodge where 240 of their family and friends gathered in honor of the couple.

Sommerville, a Knoxville native, and Bret, from Georgetown, Ky., met while students at the University of Kentucky and immediately bonded over their love of animals. Bret grew up on a working farm, and Sommerville is a competitive dressage rider who also trains horses. After dating for a year and a half, Bret proposed, and the wedding planning began. With Sommerville living in Wellington, Fla. and competitively riding and training horses under the tutelage of Juan Mutate, she knew that her busy schedule would make it difficult to put all of her focus on planning. She enlisted Libby Fisher, of A Beautiful Room, to spearhead the planning and creation of all of the floral arrangements. The couple wanted the affair to reflect their personalities as well as pay tribute to where they were raised by incorporating special details.

Bret and Sommerville decided that an upscale outdoor setting would be ideal for their wedding. Once they decided on RT Lodge as the venue, the rest of the details began to fall into place. Drawing from the elegant yet rustic style of the lodge, they picked a color scheme that complemented the natural surroundings. Muted hues of mauves, blues, cream, and pewter were incorporated in all aspects of the wedding. The bride wanted to use lots of flowers so a variety of different types in the signature color were chosen, and the multitude of blooms lent



the venue a lush and romantic feel. With many of their guests traveling from out of town, rooms were reserved at the lodge so that everyone would be able to enjoy the weekend together. Upon arrival, they were welcomed with hometown flair in the form of Ham and Goody's famous lemon cookies as well as an itinerary with the weekend's activities and information on local restaurants and attractions.

For her five attendants' attire Sommerville chose floor-length Vera Wang dresses made of tulle in three different colors. The pale mossy green, cloudy blue, and midnight blue made for a beautiful backdrop to their bouquets of white roses. For an interesting twist, the bride carried a standout cascading bouquet



of pale blue, mauve, and cream flowers. Augusta Jones designed Sommerville's dramatic strapless ivory drop-waist tulle gown.

The day before the wedding Sommerville's bridal party joined her for a luncheon at the Orangery. The bride and her maids were treated to a wonderful meal featuring spinach and radicchio salad with grilled chicken, shrimp and scallop pasta, boursin stuffed chicken breast, and a Palm Beach brownie for dessert. After the lunch, the ladies relaxed at an afternoon spa session. Sommerville recalls, "One thing that made the weekend so wonderful was getting to spend time with my friends, many of whom I don't get to see often."



That evening following the wedding rehearsal, the groom's parents hosted the rehearsal dinner at RT Lodge at 6:30. Cocktails were served on the veranda before the dinner of mixed green salad, filet mignon and red wine braised short ribs, roasted chicken with fingerling potatoes, and vanilla bean crème brulée for dessert. Bold floral arrangements of wildflowers and sprigs from the property lent a charming feel to the formal dinner. Guests were then invited to a festive bonfire complete with s'mores and iced coffee cocktails.

The ceremony was held outside on the meadow where Fisher had commissioned a flagstone aisle and standing space for the nuptials. The aisle was flanked by rose petals that coordinated with pew markers composed of Virginia roses, ivy, light and dark blue delphinium, and larkspur. Whimsical hand-made





angel's wings adorned with fresh flowers were made for the two flower girls to wear as well as wands with streaming ribbons to carry. Sommerville and Bret wanted their canine companions to be a part of their special day, so Max and Hooper attended the ceremony with floral wreaths around their necks. State Senator Jamie Woodson officiated at the traditional ceremony, and close friend Lauren Hall read a selection from *The Prophet*. The arbor was a spectacular floral focal point that perfectly framed the pair as they said their vows. After the couple was wed, they enjoyed a celebratory cocktail hour with their guests before the reception.

Under a big tent, square tables covered in denim linens with a ruched ribbon motif held square containers filled with stunning arrangements of vendella roses, hydrangeas, white lisianthus, gardenias, and stephanotis surrounded by candles. Flat and sparkling water as well as specially selected white and red wines evoked a European bistro feel. Guests enjoyed a dinner of Scottish salmon, chicken sausage, Australian lobster, hanger steak and a variety of seasonal salads. The five-tiered orange, apricot, and strawberry flavored bride's cake was decorated with fanciful buttercream blossoms alongside live flowers. The groom indulged his love for pie and chose to have a pie bar with Key Lime, lemon chiffon, and citrus tartlets to choose from. Signature cocktails were created as a nod to the bride and groom with a Sommerville Tea of peach schnapps, black tea and ginger and a selection of Bret's favorite fine Kentucky bourbons.

The newlyweds hit the dance floor to take their first spin to Brooks and Dunn's "Ain't Nothing Bout You," before inviting the guests to join them. Surrounded by loved ones, they spent the night celebrating, socializing, and dancing. Sommerville says, "So many of our friends were there, and we had a great time dancing. It was just so wonderful being with everyone." As the fabulous evening came to an end, the couple lit up the night as they exited their reception amidst a sparkler sendoff. After a honeymoon in Cancun, Bret and Sommerville eagerly began their new life together with future plans to open a barn on the Harris family's 50-acre spread, Whistle Jacket Farm, for boarding and training dressage riding. ⊙







Bridal Registry

Gift Gourmet & Interiors proudly registered Sommerville Harris Culbertson and looks forward to working with many more of Knoxville's future brides.

For appointments please call Bridal Associate, Jamie DeNovo 865-212-5639.

Select from beautiful lines including

- Royal Crown Derby
- Herend
- Juliska
- Annieglass
- Vietri
- Provista Design
- Match
- Arte Italica
- JL Coquet
- Atticus
- Anichini
- Jan Barboglio
- The Good Earth
- L'Objet
- S D H Linens
- Ann Gish Linens
- Bella Notte Linens
- Juane De Chrome

GIFT GOURMET & INTERIORS
Home & Lifestyle Boutique

# Outdoor Elegance

*Campbell Tent and Party Rentals showroom brings dreams to reality*

Lounging on the settee with the light of the crystal chandelier sparkling off the fine linens and china, the bride's guest was almost surprised when a gentle breeze swept through the room.

It's easy to forget you are outside when the tent room is as elegantly appointed as one constructed by Campbell Tent and Party Rentals.

And it is this suspension of belief and commitment to functional elegance that owner Jack Campbell has embraced for his party rental business. Now at home in a brand new 17,500 sq. ft. building with a new, incredibly beautiful showroom, Jack Campbell is ready to welcome brides, party planners and corporate clients to come see what is new at Campbell Tent & Party Rentals.

"We have a 2,500 sq. ft. showroom that showcases our offerings," says Campbell. "When a bride-to-be or party planner comes into our showroom, they are immediately wowed by what they see and realize this is definitely a step above the average party rental store." Campbell Tent & Party Rentals has everything a bride needs–linens, china, glassware and so much more.

Whether it is washing the tent in your choice of colors or selecting sectional sofas and couches instead of folding chairs or the new Spandex chair covers with their sleek, contemporary style, a customer is limited only by their imagination in creating an outdoor party room at Campbell's. And, they have the added bonus of working directly with the owner and his family. Jack Campbell, who has been in the rental business since 1985, is in his 6th year of business for himself. Son, Mike, who is now director of operations, has been in the business since he was 14.

"We have some of the most experienced staff in the area," says Jack. "And we are dedicated to serving the customer."

Jack Campbell loves working with the outdoors. "With nature, you have a clean slate. You are not bound by anyone's brick wall or color schemes. You have Mother Nature as your guide, so outdoors gives you the option of being as big or as small as you want it."

And now, with the offering at Campbell Tent and Party Rentals, those options can include functional elegance to match the dreams of any bride-to-be or party planner.



**Campbell Tent & Party Rentals**
3494 Northcross Drive in Alcoa, Just off Pellissippi.
Locally owned and operated

CAMPBELL TENT
& Party Rentals



Tents | Tables | Chairs | China | Linen | Wedding Equipment | Moonwalks
Fun Games | Concessions Equipment

*Our philosophy is very simple yet age old. We believe in giving good measure and treating our customers the way we would want to be treated. We offer competitive pricing, quality products, unmatched service, and most of all you will know that you are appreciated. Our experienced and courteous, professional employees guarantee satisfaction. To make your next event special, choose Campbell Tent & Party Rentals.*

CAMPBELL TENT & PARTY RENTALS
3494 Northcross Drive, Alcoa, TN 37701 | 865.588.2588 | Fax: 865.983.8669 | www.CampbellTent.com